The court took time to* consider, añd afterwards Chancellor J AMES delivered the decree of the court:
. Complainants in their original bill, which has been revived in the usual form, have called upon Edmund Beilin-ger,; deceased, as one of the executors of Benjamin Webb, deceased, the father of complainants, for an account of all his transactions with the said estate, for an account of the profits of the real and personal estate, and for all the property contained in the inventory returned by the executor to the ordinary’s office. Defendant, in his answer, has accounted for the crops which he made from the year *496 when he first took upon himself the management oí' the estate as a qualified executor, until the year 1779. Bur in the years 1779, 1780, and 1781, he renders no account, of crops; stating as a reason therefor the well known unsettled state of the country during those three years, when ithis state had become the seat of the revolutionary war.— From the year 1782 till the time of his delivering up one moiety of the estate to the complainant Benjamin Webh: which was in January, 1788, and the other moiety to Charles Webb, which was in February, 1789, the defendant accounts for certain crops which are those complained of, and for lumber sold. As to the property, contained in the inventory, more especially the negroes; defendant accounts for the deficiency of their number when delivered up to the heirs, compared with that contained in the inventory, by stating in his answer — “ that many of the testate’s negroes died of the cáihp fever, and many of them fanaway to the British : but how many of each, he cannot irecollect; but that none of them were evter sold, and that he thought himself fortunate in keeping what negroes remained.”
Such being the substance of the bill and answer, the accounts were referred to the master, who reports that he is At a. loss for any principle upon which he is to settle them, and prays the court to establish such as may be his guide. Infixing such principles for the master, the court have agreed to place out of the question certain minor charges* made by the complainants, such as letting the rice machines go to ruin, Sec. as sounding in damages alone, and to take into consideration only the alleged deficiency in the crops; and in the number of negroes' delivered lip to the heirs; And first* as to the deficiency in the crops. Upon this charge the complainants gave evidence of the crops made by the testator Benjamin Webb, for the six years preceding his death ; and of the crops made on a plantation in the neighbourhood by the executors of Austin / and from á comparison of these, with the crops of the estate, made by Edmund Bellinger, endeavoured to draw an in *497 ference that the executor Bellinger was guilty of such gross negligence, us to make him liable either for the alleged deficiency, or for tin hire of the negroes. But the evidence in neither view affords a satisfactory guide to the court. In the first place, tbe crops of the testator Benjamin Webb appear to have d. creased annually, which cannot well he accounted for, but for some deterioration in tbe lands planted under the culture of that day : and if so, ibis cause of the decrease of crops must have increased annually, while the lands were worked by Edmund Bel-linger, since no improvements were made in his time.
Next, as to the second ground of comparison, it appears from the evidence that tbe estate of Austin did not lie in such an exposed situation as that of Webb, the former be-iag three miles off, and tbe latter lying on the main road leading from Charleston to Savannah, which was much frequented fay the hostile armies. That the lands of the estate of Austin were inland swamp, which in those days of the infancy of rice culture, was deemed much better, and indeed produced more tban tbe tide lands of Asbepoo, of which the estate of Webb consisted : and that John Moultrie, who was well known to be disaffected to the American cause, and to possess much influence among tbe British, was interested in the estate of Austin, and that this estate was consequently highly favored by the enemy. Such was the evidence offered upon this ground. But to have made the comparison satisfactory, testimony ought to have been • adduced to shew what crops Were made on lands situated in a similar manner with those of Webb, as to soil, tbe pitch of the tide and exposure to the depredations of the enemy; but in this instance an estate appears to have been selected, differing from tbe one with which it is compared in all these essential circumstances. Besides, if evidence had been produced to shew what kind of crops the defendant Bellinger made for himself, it would have afforded a pretty good rule of decision, since so far as these were good, he might have been charged with neglect in not doing so well for the estate as for himself; and *498 so fár as they were Bad, he might have been exculpated. — ^ Some general testimony has been gone into to shew that he was a very-bad planter, but this has not descended to particulars so as to shew what was made for himself in each year, and thus to afford a certain rule by which we could compare his own crops with those made by the estate. Under this view of the case, the court are left in a state of uncertainty ; .for while on the one hand we profess ourselves not to be satisfied with the comparisons offered to us, on the other we are not altogether content with the ci-ops which have been made by Mr. Bellinger. Therefore being thus situated, we think it will be more safe to resort to the general rule formerly adopted in the ease of Mayrantvs. Davis, executor of Nelson, and to allow the complainant negro hire. But in the calculation of this, we cannot think it equitable to charge defendant with such hix-e, during the years 1779, 1780, and 1781. In thefhst year it has been proved that the plantation was very much distuihed, and that sixty four negroes went away in. one night,-during the month of May, which is a very critical time for the making of a rice crop. In the second year, it is notorious that the British overrun the whole of the lower country, and in the third year they were still in possession of it; and we find that nothing was allowed for that year, in the case of May rant vs. the executor of Nelson, and we do not see why the same rule should not apply in this case. Moi'eover, these were years of general confusion and calamity, in which, if any thing had been inade, there does not appear any evidence to shew that it could have been disposed of in market; and in which, all but the particular friends of the British thought themselves fortunate if they could raise provisions, and save their negroes from being carried off; but even in that many of. our citizens entirely failed. For all these reasons, we are of opinion that it would be rigorous to charge the defendant with negro hire in those three years.
The second ground of consideration is, the alleged deficiency in the number of negroes between those named in the inventory, and those delivered up to the *499 heirs. To this charge the defendant Bellinger has answered as we have seen above — “ that he thought himself fortunate in beeping what negroes remained,” &c, and Mrs. Townsend has stated in her evidence, “ that she knows of herself that many of the negroes of the estate went off with the British, and that she heard her mother often count them over, and say that sixty-four had gone.” This testimony, when coupled with the answer, is satisfactory to the court; and under all these circumstances, we are of opinion that the complainants should be contented with what negroes were delivered up to them.
Let the accounts therefore be referred to the master to ascertain the negro hire from the year 1782, inclusive, till the year that Edmund Bellinger delivered up the estate to the complainants respectively;, charging the .defendant with such hire at the rate of 10/. per hand for the number of working hands employed in each year, taking that number at sixty workers, unless defendant can shew that they were fewer on the plantation. But the years 1779, 1780, and 1781, are not to be included. Let him also deduct from the amount of the negro hire, the monies credited to the estate by the executor Bellinger, for the annual sales of crops,.and other matters, as stated in the accounts produced by the defendant.